Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9100 Wilshire Blvd. #725 E.
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHERINE COFFMAN, | Case No. |
| Plaintiff, | |
| vs. | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| BOSTON PRIVATE FINANCIAL HOLDINGS, INC., ANTHONY DECHELLIS, STEPHEN M. WATERS, MARK F. FURLONG, JOSEPH C. GUYAUX, DEBORAH F. KUENSTNER, GLORIA C. LARSON, KIMBERLY S. STEVENSON, LUIS A. UBIÑAS, and LIZABETH H. ZLATKUS, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff Catherine Coffman ("Plaintiff"), on behalf of herself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through her counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for her Complaint:

**NATURE OF THE ACTION**

1.      This is an action brought by Plaintiff against Boston Private Financial Holdings, Inc. ("Boston Private" or the "Company") and the members of Boston Private's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Boston Private will be acquired by SVB Financial Group ("SVB") (the "Proposed Transaction").

2.      On January 4, 2021, Boston Private and SVB issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated January 4, 2021 (the "Merger Agreement") to sell Boston Private to SVB.  Under the terms of the Merger Agreement, each Boston Private stockholder will receive (i) 0.0228 shares of SVB common stock; and (ii) $2.10 in cash for each share of Boston Private common stock they own (the "Merger Consideration").  The Proposed Transaction is valued at approximately $900 million.

3.      On February 11, 2021, SVB filed a Form S-4 Registration Statement (the "Registration Statement") with the SEC.  The Registration Statement, which recommends that Boston Private stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the projections for each of Boston Private and SVB and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley"); and (ii) the background of the Proposed Transaction.  Defendants authorized the issuance of the false and misleading Registration Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      In short, unless remedied, Boston Private's public stockholders will be irreparably harmed because the Registration Statement's material misrepresentations and omissions prevent them

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

from making a sufficiently informed voting decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company operates several office locations in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Boston Private.

9. Defendant Boston Private is a Massachusetts corporation, with its principal executive offices located at Ten Post Office Square, Boston, Massachusetts 02109 and several offices located in this District. The Company is a leading provider of integrated wealth management, trust and banking services to individuals, families, businesses and nonprofits. It is the holding company of

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Boston Private Bank & Trust Company ("Boston Private Bank" or the "Bank").  Boston Private's common stock trades on the NASDAQ Global Select Market under the ticker symbol "BPFH."

10.     Defendant Anthony DeChellis ("DeChellis") is Chief Executive Officer ("CEO") and President of the Company and the Bank, and has been a director of the Company since November 2018.

11.     Defendant Stephen M. Waters ("Waters") is the Chair of the Company and the Bank, and has been a director of the Company since 2004.

12.     Defendant Mark F. Furlong ("Furlong") has been a director of the Company since 2016.

13.     Defendant Joseph C. Guyaux ("Guyaux") has been a director of the Company since 2016.

14.     Defendant Deborah F. Kuenstner ("Kuenstner") has been a director of the Company since 2007.

15.     Defendant Gloria C. Larson ("Larson") has been a director of the Company since 2015.

16.     Defendant Kimberly S. Stevenson ("Stevenson") has been a director of the Company since 2015.

17.     Defendant Luis A. Ubiñas ("Ubiñas") has been a director of the Company since 2017.

18.     Defendant Lizabeth H. Zlatkus ("Zlatkus") has been a director of the Company since 2015.

19.     Defendants identified in paragraphs 10-18 are referred to herein as the "Board" or the "Individual Defendants."

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## OTHER RELEVANT ENTITIES

20.    SVB is a Delaware corporation, with its principal executive offices located at 3003 Tasman Drive, Santa Clara, California 95054.  It is a bank holding company under the Bank Holding Company ("BHC") Act that has elected to be treated as a financial holding company.  SVB is the holding company for Silicon Valley Bank, a California commercial bank whose deposits are insured by the Federal Deposit Insurance Corporation ("FDIC").  SVB and its subsidiaries provide commercial and private banking, asset management, private wealth management, brokerage and investments services and funds management to companies in the technology, life science and healthcare, private equity and venture capital, and premium wine industries through its four operating segments: the Global Commercial Bank, SVB Private Bank, SVB Capital and SVB Leerink.  SVB's common stock trades on the NASDAQ Global Select Market under the ticker symbol "SIVB."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

21.    Boston Private is a bank holding company under the BHC Act and the holding company of Boston Private Bank, a Massachusetts trust company whose deposits are insured by the FDIC.  Boston Private offers a full range of banking and wealth management services to high-net-worth individuals, families, businesses, and select institutions through two reportable segments: (a) Private Banking and (b) Wealth Management and Trust.

22.    The Private Banking segment is comprised of the banking operations of Boston Private Bank and primarily operates in three geographic markets: New England, Northern California, and Southern California.  The Private Banking segment is principally engaged in providing banking services to high-net-worth individuals, privately-owned businesses and partnerships, and nonprofit organizations.  In addition, the Private Banking segment is an active provider of financing for

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

affordable housing, first-time homebuyers, economic development, social services, community revitalization and small businesses.

23.     The Wealth Management and Trust segment is comprised of Boston Private Wealth, a registered investment adviser and wholly owned subsidiary of Boston Private Bank, and the trust operations of Boston Private Bank.  The Wealth Management and Trust segment operates in New England, New York, Southeast Florida, Northern California, and Southern California and offers planning-based financial strategies, wealth management, family office, financial planning, tax planning, and trust services to individuals, families, institutions, and nonprofit institutions.

24.     On January 21, 2021, Boston Private announced its fourth quarter and full year 2020 financial results, reporting net income of $25.0 million, compared to $22.7 million for the third quarter of 2020 and $21.2 million for the fourth quarter of 2019.  Diluted earnings per share were $0.30, compared to $0.28 in the third quarter of 2020 and $0.26 in the fourth quarter of 2019.  Average total deposits were $8.4 billion, a 20% increase year-over-year, and total assets under management/advisory ("AUM") were $17.1 billion, a 2% increase year-over-year.  Commenting on the Company's performance and looking to the future, defendant DeChellis stated:

> Fourth quarter 2020 results were positively impacted by a release from our allowance for loan losses and Paycheck Protection Program revenue, while strong deposit growth enhanced on-balance sheet liquidity.  I am extremely proud of our team's accomplishments throughout 2020.  We continued to deliver exceptional client service in a challenging environment, while improving our client experience and executing on our strategic plan.  We are excited about the prospects of our pending merger with SVB Financial Group.  Together, we will be well positioned to grow and scale our business, while enhancing shareholder value.

**The Proposed Transaction**

25.     On December 2, 2020, Boston Private and SVB issued a joint press release announcing the Proposed Transaction.  The press release states, in relevant part:

> SANTA CLARA, Calif. and BOSTON — JANUARY 4, 2021 — SVB Financial Group ("SVB") (NASDAQ: SIVB), the parent of Silicon Valley Bank, the bank of the world's most innovative companies and their investors, and Boston Private Financial

Holdings, Inc. ("Boston Private")(NASDAQ: BPFH), the parent company of Boston Private Bank & Trust Company, a leading provider of integrated wealth management, trust and banking services to individuals, families, businesses and nonprofits, today announced that they have entered into a definitive merger agreement pursuant to which SVB will acquire Boston Private.  Combined private bank and wealth management assets under management would be $17.7 billion, based on 9/30/20 figures.

Under the terms of the merger agreement, Boston Private shareholders will receive 0.0228 shares of SVB common stock and $2.10 of cash for each Boston Private share they own, representing a total consideration value of approximately $900 million based on SVB's closing stock price of $387.83 on December 31, 2020.

SVB's vision is to be the premier financial partner for the innovation economy, providing companies, entrepreneurs and their investors the services they need to succeed via four core businesses: commercial banking, investment banking, private banking and wealth management and fund management.  The acquisition of Boston Private accelerates SVB's private bank and wealth management offering, strengthening SVB's overall platform and ability to fully meet the financial needs of its clients.

"Our clients rely on us to help increase the probability of their success – both in their business and personal lives," said Greg Becker, President and CEO of SVB Financial Group.   "Boston Private's experienced and well-regarded team, robust service offering, and advanced technology platform will significantly bolster our private bank and wealth management capabilities and enhance our ability to offer products and services tailored to the needs of founders, executives and investors."

Boston Private provides a full spectrum of wealth, trust, and private banking services dedicated to helping clients simplify and strengthen their financial positions.  With Boston Private's product suite and recently redesigned technology platform, SVB can expand its existing wealth management solutions, which include complex strategies to manage concentrated stock positions, to add tax planning, trust services, philanthropy and estate planning, while offering a significantly improved digital client experience. Boston Private's clients will benefit from greater access to investment opportunities and participation in the innovation economy, as well as the power of SVB's large balance sheet to support their borrowing needs.

"Together, SVB and Boston Private will be well-positioned to grow and scale our business, leveraging SVB's deep client relationships and broad reach across the innovation economy to capture a greater share of the wealth management market," said Anthony DeChellis, CEO of Boston Private.  "We look forward to working together to support our clients as they pursue the goals they have for their businesses, families and legacies."

SVB and Boston Private currently serve clients in complementary major metropolitan markets with an approach that has earned both firms industry-leading Net Promoter Scores.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**Insiders' Interests in the Proposed Transaction**

26.     Boston Private insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Boston Private.

27.     Notably, certain Company insiders have secured positions for themselves with the combined company.  For example, defendant DeChellis has entered into a letter agreement with SVB (the "Letter Agreement"), pursuant to which he will serve as CEO of Private Banking & Wealth Management of SVB with an annual base salary of $700,000, a target annual cash incentive opportunity of 115% of annual base salary, a target annual equity incentive opportunity of $1,500,000, and employee benefits consistent those provided to other senior executives of SVB.  In addition, as soon as practicable following the effective time, defendant DeChellis will be granted (a) a service-vesting restricted stock unit award in respect of SVB common stock with a grant date fair value of $4,000,000, which will vest in equal annual installments over four years following the grant date, subject to continued employment, and (b) a performance-vesting restricted stock unit award in respect of SVB common stock with a target grant date fair value of $3,000,000, which will cliff vest on the third anniversary of the grant date, subject to continued employment and the satisfaction of applicable performance goals.  If such employment were terminated without cause or for good reason, he would be entitled to a lump sum cash payment equal to $3,500,000.

28.     SVB has also agreed to implement a retention program for Boston Private's executive officers other than defendant DeChellis to incentivize their continued service following the consummation of the merger.  Pursuant to the retention program, each of these named executive officers has been offered the following retention awards: Mr. Steve Gaven—$1,050,000; Mr. John Longley—$1,100,000; Mr. Paul M. Simons—$1,100,000; and Mr. Bill Woodson—$1,100,000.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

29.     Moreover, Boston Private insiders stand to reap substantial financial benefits for securing the deal with SVB.  Pursuant to the Merger Agreement, all outstanding Company options, restricted stock units, and performance-vesting restricted stock units will vest and convert into the right to receive the Merger Consideration.  The following table summarizes the value of the equity awards that Company insiders stand to receive:

| Name | Stock Options ($) | Time-Vesting Restricted Stock Units ($) | Performance-Vesting Restricted Stock Units ($) |
|------|---|---|---|
| *Named Executive Officers* | | | |
| Anthony DeChellis | — | — | — |
| Steven M. Gaven | 272,893 | 226,600 | 608,344 |
| John T. Longley | 154,700 | 405,255 | 185,450 |
| Paul M. Simons | 331,103 | 538,011 | 624,738 |
| William I. Woodson | 436,619 | 920,310 | 463,636 |

30.     In addition, if they are terminated in connection with the Proposed Transaction, Boston Private's named executive officers stand to receive substantial cash severance payments as set forth in the following table:

| Name | Cash ($)(1) | Equity ($)(2) | Perquisites/ Benefits ($)(3) | Total ($) |
|------|---|---|---|---|
| *Named Executive Officers* | | | | |
| Anthony DeChellis | 3,500,000 | — | — | 3,500,000 |
| Steven M. Gaven | 380,685 | 1,107,837 | 62,248 | 1,550,770 |
| John T. Longley | 382,833 | 745,404 | 62,248 | 1,190,485 |
| Paul M. Simons | 382,833 | 1,493,852 | 62,248 | 1,938,933 |
| William I. Woodson | 382,833 | 1,820,565 | 62,329 | 2,265,727 |

**The Registration Statement Contains Material Misstatements or Omissions**

31.     Defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to Boston Private's stockholders.  The Registration Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

32.     Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the projections for each of Boston Private and SVB, utilized by the Company's financial advisor Morgan Stanley in its financial analyses, and the data and inputs underlying the

financial valuation analyses that support the fairness opinion provided by Morgan Stanley; and (ii) the background of the Proposed Transaction.

***Material Omissions Concerning Boston Private's and SVB's Financial Projections and Morgan Stanley's Financial Analyses***

33. The Registration Statement omits material information regarding Boston Private's and SVB's financial projections, relied upon by Morgan Stanley for its analyses.

34. For example, the Registration Statement fails to disclose the projected dividends for Boston Private and SVB, utilized by Morgan Stanley in its dividend discount analyses of Boston Private and SVB.

35. Additionally, the Registration Statement fails to disclose the assumptions underlying the Company's forecasts reviewed by the Board at its September 30, 2020 meeting and the specific assumptions underlying the alternate hypothetical scenarios which assumed Boston Private's business performed significantly better or worse.

36. Moreover, the Registration Statement fails to disclose the assumptions underlying the Company's revised forecasts reviewed by the Board at its November 18, 2020 meeting and the specific assumptions underlying the alternate hypothetical scenarios which assumed Boston Private's business performed significantly better or worse.

37. The Registration Statement describes Morgan Stanley's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Morgan Stanley's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Boston Private's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Morgan Stanley's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

38.     With respect to Morgan Stanley's *Boston Private Public Trading Comparables Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for each of the selected companies analyzed by Morgan Stanley.

39.     With respect to Morgan Stanley's *Boston Private Dividend Discount Analysis*, the Registration Statement fails to disclose: (i) the projected dividends used in the analysis; (ii) quantification of the terminal values; (iii) Morgan Stanley's basis for applying a range of terminal forward multiples of 11.0x to 13.0x and a 1.0% opportunity cost of cash; (iv) the Company's net debt as of September 30, 2020; and (v) quantification of the individual inputs and assumptions underlying the discount rates of 8.5% to 10.5%.

40.     With respect to Morgan Stanley's *Boston Private Analyst Price Targets Analysis*, the Registration Statement fails to disclose: (i) the price targets observed in the analysis; (ii) sources thereof; and (iii) quantification of the individual inputs and assumptions underlying the discount rate of 9.5%.

41.     With respect to Morgan Stanley's *SVB Financial Public Trading Comparables Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for each of the selected companies analyzed by Morgan Stanley.

42.     With respect to Morgan Stanley's *SVB Financial Dividend Discount Analysis*, the Registration Statement fails to disclose: (i) the projected dividends used in the analysis; (ii) quantification of the terminal values; (iii) Morgan Stanley's basis for applying a range of terminal forward multiples of 14.0x to 22.0x and a 1.0% opportunity cost of cash; (iv) SVB's net debt as of September 30, 2020; and (v) quantification of the individual inputs and assumptions underlying the discount rates of 7.2% to 9.2%.

43.     With respect to Morgan Stanley's *SVB Financial Analyst Price Targets Analysis*, the Registration Statement fails to disclose: (i) the price targets observed in the analysis; (ii) sources

thereof; and (iii) quantification of the individual inputs and assumptions underlying the discount rate of 8.2%.

44.     Additionally, the Registration Statement sets forth that for purposes of rendering its fairness opinion, Morgan Stanley reviewed the financial terms of certain comparable acquisition transactions.  Registration Statement at 58.  The Registration Statement, however, completely omits Morgan Stanley's comparable acquisition transactions analysis.

45.     Without such undisclosed information, Boston Private stockholders cannot evaluate for themselves whether the financial analyses performed by Morgan Stanley were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Morgan Stanley's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

46.     The omission of this information renders the statements in the "Certain Unaudited Financial Information" and "Opinion of Boston Private's Financial Advisor" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

47.     The Registration Statement fails to disclose material information concerning the background of the Proposed Transaction.

48.     For example, the Registration Statement fails to disclose whether any potential counterparties entered into nondisclosure agreements with Boston Private containing standstill restrictions, and, if so, whether they include "don't-ask, don't-waive" ("DADW") standstill provisions that are presently precluding any of these potential buyers from submitting a topping bid for the Company.

49.     The failure to disclose the existence of DADW provisions creates the false impression that any of the potential buyers who entered into nondisclosure agreements could make a superior proposal for the Company.  If those nondisclosure agreements contain DADW provisions, then those potential buyers can only make a superior proposal by (i) breaching the confidentiality agreement—since in order to make the superior proposal, they would have to ask for a waiver, either directly or indirectly; or by (ii) being released from the agreement, which if action has been done, is omitted from the Registration Statement.

50.     Any reasonable Boston Private stockholder would deem the fact that the most likely topping bidders for the Company may be precluded from making a topping bid for the Company to significantly alter the total mix of information.

51.     Additionally, the Registration Statement fails to disclose the identity of the investment banker that introduced defendant DeChellis to SVB's President and CEO, Greg Becker.  The Registration Statement also fails to disclose the institution the investment banker works for and whether this institution is receiving a fee in connection with introducing Boston Private and SVB.

52.     The omission of this information renders the statements in the "Background of the Merger" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

53.     The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Registration Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and Boston Private's public stockholders will be unable to make a sufficiently informed decision whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**COUNT I**

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

54.     Plaintiff repeats all previous allegations as if set forth in full.

55.     During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

56.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement.   The Registration Statement was prepared, reviewed, and/or disseminated by the defendants.   It misrepresented and/or omitted material facts, including material information about the Company's and SVB's financial projections, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Morgan Stanley, and the background of the Proposed Transaction.   The defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

57.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

58.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

59.     Because of the false and misleading statements in the Registration Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.   Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Claims Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act**

60.     Plaintiff repeats all previous allegations as if set forth in full.

61.     The Individual Defendants acted as controlling persons of Boston Private within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Boston Private, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

62.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

63.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Registration Statement.

64.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

65.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

66.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Boston Private's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of Boston Private, and against defendants, as follows:

A.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Boston Private stockholders;

B.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.    Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.    Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

- 16 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1

Dated: March 15, 2021

**WEISSLAW LLP**
Joel E. Elkins

2

3

By: */s/ Joel E. Elkins*

4

5

Joel E. Elkins
9100 Wilshire Blvd. #725 E.
Beverly Hills, CA 90210
Telephone:  310/208-2800
Facsimile:   310/209-2348
-and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY  10036
Telephone: 212/682-3025
Facsimile:  212/682-3010

6

7

8

9

10

*Attorneys for Plaintiff*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS